**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KELLY S.,

      Plaintiff,

  v.            3:20-CV-1232
                (DJS)
KILOLO KIJAKAZI, *Acting Commissioner*
*of Social Security*,

      Defendant.
_____

**APPEARANCES:**         **OF COUNSEL:**

LACHMAN & GORTON       PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 E. Main St.
P.O. Box 89
Endicott, NY 13761

U.S. SOCIAL SECURITY ADMIN.   LUIS PERE, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building, Room 625
25 New Sudbury St.
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 6 & General Order 18.

purposes of disability insurance benefits and for supplemental security income disability benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 15 & 16. Plaintiff also filed a Reply Brief. Dkt. No. 19. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied. The Commissioner's decision denying Plaintiff disability benefits is reversed, and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1977. Dkt. No. 12, Admin. Tr. ("Tr."), p. 19. Plaintiff reported that she has at least a high school education and is able to communicate in English. Tr. at pp. 19 & 37. She has past work experience as an assistant manager, cashier, and a fast-food worker. Tr. at pp. 38-43, 324, & 426. Plaintiff alleges disability due to depression, anxiety, bipolar disorder, spine disorder, obesity, and asthma. Tr. at pp. 12 & 62.

### B. Procedural History

Plaintiff applied for disability and disability insurance benefits on November 16, 2018. Tr. at p. 10. She alleged a disability onset date of January 1, 2018. Tr. at pp. 10, 62. Plaintiff's applications were initially denied on March 18, 2019, and on reconsideration were denied again on August 16, 2021, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at p. 10. Plaintiff appeared

at the hearing before ALJ Gretchen Mary Greisler on January 30, 2020 at which she and a vocational expert testified. Tr. at pp. 30-57. On March 4, 2020, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 7-21. On August 3, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2023 and that she had not engaged in substantial gainful activity since January 1, 2018, the alleged onset date. Tr. at p. 12. Second, the ALJ found that Plaintiff had the following severe impairments: depression, anxiety, bipolar disorder, spine disorder, obesity, and asthma. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 13. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), and 416.967(b) except:

> she can occasionally stoop, balance, crouch, crawl, kneel, and climb stairs and ramps but cannot climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to dangerous machinery. Can perform simple, routine, and repetitive tasks and can make simple decisions directly related to his or her work and tolerate occasional changes. Work at consistent, goal-oriented pace, but not a fast production rate pace such as would be experienced in assembly line type of work.

> Tolerate occasional contact with supervisors, coworkers, and the public. Cannot tolerate concentrated exposure to respiratory irritants.

Tr. at p. 14.

Fifth, the ALJ found that Plaintiff was able to perform past relevant work as a cashier II/DOT code 211.462-010/SVP 2/light. Tr. at p. 19. Alternatively, the ALJ noted that based upon the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy that the Plaintiff can also perform. Tr. at pp. 19-21. The ALJ, therefore, concluded that Plaintiff is not disabled, as that term is defined in the Social Security Act. Tr. at p. 21.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v.*

*Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§

5

404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff makes several arguments which relate primarily to the ALJ's analysis of the severity of Plaintiff's back condition. First, Plaintiff argues that the failure of the ALJ to explicitly consider and discuss the medical opinion of Dr. Khan, Plaintiff's

6

treating physician, requires a remand. Dkt. No. 15, Pl.'s Mem. of Law at pp. 6-8. Second, in Plaintiff's opinion the functional capacity assessments should not have been relied upon by the ALJ as they were prepared by nonmedical "analysts" and were not subjected to a proper supportability and consistency analysis. *Id*. at pp. 8-12. Third, Plaintiff asserts that the ALJ improperly rejected the opinion of Dr. Litchmore, who found moderate to marked limitations in carrying heavy objects, stooping, bending, kneeling, crawling, and standing for prolonged periods of time as a result of Plaintiff's chronic back pain, Tr. at pp. 479-481, upon the grounds that his opinions were inconsistent with the Plaintiff's physical examination. Pl.'s Mem. of Law at pp. 12-15. Plaintiff asserts that the ALJ failed to properly consider her chronic pain and erred in concluding that she could perform past relevant work or other work. *Id*. at pp. 15-16.

In response, Defendant asserts that the ALJ employed the proper analysis for evaluating Plaintiff's symptoms and limitations, and that her determination was supported by substantial evidence. Dkt. No. 16, Def.'s Mem. of Law, pp. 4-11. In particular, Defendant asserts that the ALJ was not required to perform an analysis of Dr. Khan's opinion, as the time period in question did not satisfy the durational requirement of the statute, and, alternatively, that any error in that regard was harmless. *Id.* at. p. 4. Second, Defendant notes that while the medical findings of the two state agency physicians, Dr. Periakaruppan and Dr. Seok, were prepared by analysts, they were thereafter completed and signed by the doctors, and their opinions are supported by, and consistent with, the record. *Id*. at pp. 5-9. Finally, Defendant argues that the ALJ's

analysis of Dr. Litchmore's conclusions regarding Plaintiff's subjective complaints; and the ability of Plaintiff to do her past work, was in all respects proper. *Id.* at pp. 9-11.

Plaintiff correctly notes that the ALJ did not expressly discuss[2] the treatment she received from her treating physician Dr. Khan, or his functional capacity opinion that, because of Plaintiff's long-standing back pain issues, she would be off task more than 15% of the time and would be limited to sitting a maximum of four hours per day. Pl.'s Mem. of Law at p. 5; Tr. at pp. 773-775. At issue in this appeal is not whether the ALJ is required to accept this opinion, but rather whether the ALJ is obligated to specifically discuss it as part of her written analysis. The Court concludes that the failure of the ALJ to articulate an analysis of Dr. Khan's opinion, and its support or contradiction to other medical evidence in the record, warrants a remand.

By way of background, Plaintiff has a multi-year history of lumbar back pain. In November of 2015 her doctors ordered an MRI, which disclosed disc herniation which was within close contact with the L5 nerve root. Tr. at p. 587. Plaintiff saw Dr. Jimenez at United Health Service ("UHS") for this issue during January of 2017 and noted a one-year history of low back pain radiating to the left foot and thigh. Tr at p. 544. At that visit Plaintiff had a positive straight leg raise test on the left side, and there was moderate pain with motion. Tr. at p. 547. The assessment was lumbar disc herniation with radiculopathy, with a recommendation of stretching and a potential for referral to a

---

[2] Reference is made generally in the ALJ's Decision to the medial branch and ramus lumbar blocks that were administered to the Plaintiff by Dr. Khan. Tr. at p. 16.

specialist.  Tr at p. 548.  In January of 2018, Dr. Jimenez noted a pain level of 6, with lumbar tenderness and lower back pain which radiated down to her leg, aggravated by sitting and walking.  Tr. at pp. 502-512.  She was to restart her pain medication.  *Id*.  In June and October 2018, Dr. Jimenez's notes reference Plaintiff's back pain but indicate it was "mild" but worsening.[3]  Tr. at pp. 496 & 502.  The SLR test was positive on the left side.  Tr. at p. 499.

Dr. Jimenez referred the case to Dr. Khan in December 2018.  Tr. at pp. 592-596.  At that visit, the back pain was at a level of 7, and there was positive straight leg raise, together with muscle spasm.  *Id*.  The plan was to do an epidural steroid injection.  *Id*.  As noted by Dr. Khan, Plaintiff suffered from intractable low back pain that was unresponsive to conservative treatment, severe in nature, and affected her activities of daily living.[4]  Tr. at p. 571.  A second MRI was conducted on January 17, 2019, confirming an L5-S1 disc bulge, with a small left posterolateral disc protrusion and annular fissure noted, as well as prompt narrowing of the left lateral recess with contact of the left S1 nerve root.  Tr. at pp. 452 & 572.  The MRI did not disclose significant central canal or neural foraminal stenosis.  *Id*.  Dr. Khan performed a cortisone injection in the spine in January 2019.  Tr. at p. 470.  On February 11, 2019, Dr. Khan performed lumbar medial branch ramus blocks, using a local anesthetic.  Tr. at p. 484.

---

[3] At these two visits, the pain scale was recorded as 8/10 and 5/10, respectively.  Tr. at pp. 498 & 503.
[4] It appears that Plaintiff was also the subject of a physical assault in January of 2019, which impacted her ability to stand, walk, and bend.  Tr. at p. 317.

Dr. Jimenez saw Plaintiff on Feb 13, 2019, and at that time the Plaintiff reported a pain level of 8/10, exhibited paravertebral muscle spasms, but a negative SLR test. Tr. at pp. 487-493. Dr. Jimenez noted at the March 12, 2019 visit that, because of the failed epidural injections, the failed facet joint injections, and the ineffectiveness of the steroids, he may have to refer her to neurosurgery. Tr. at pp. 560 & 567. As of April 29, 2019, Plaintiff's back pain registered a level of 9 out of 10, she had no relief from any of the injections, had muscle weakness and a positive SLR at 20 degrees, but Plaintiff indicated that she was not interested in surgery, but only in pain management. Tr. at p. 620.

Dr. Khan filled out a medical assessment that covered the period that he actively treated the Plaintiff: December 31, 2018 to March 12, 2019. Tr. at pp. 774-775. Dr. Khan indicated that Plaintiff suffered from low back and leg pain, tenderness of the lumbar spine, and decreased range of motion in the lumbar spine. *Id.* His opinion was that this condition would cause Plaintiff to miss two days per month from work, and that she would be off task more than 15% but less than 20%. *Id.* She could sit for approximately four hours per day, and stand and walk for another hour, and could occasionally lift 5-10 pounds. *Id.* No analysis of this opinion was provided by the Administrative Law Judge.

During this very same period, Plaintiff was referred for an internal medical examination to be performed by Dr. Trevor Litchmore, and she was seen on January 24, 2019. Tr. at pp. 478-481. Dr. Litchmore reported a history of back pain since 2015,

10

with a present pain level of 8/10, a limitation of spinal flexion and extension, but a negative SLR.  *Id.*  His opinion was that Plaintiff's chronic back pain would cause moderate to marked limitations in terms of lifting, bending, stooping, or standing or walking for prolonged periods of time.  *Id.*  The ALJ did review and discuss this medical opinion, but concluded that the internal medicine consultative examiner's opinions were only partially persuasive, and that the severity finding was inconsistent with the physical examination of the Plaintiff.  Tr. at p. 19.  As a result, the ALJ was "not persuaded that her impairments are disabling."  *Id.*

In considering the relevant medical opinions in the record, the oft-quoted treating physician rule no longer apples.  Under the new regulations, ALJs do not give any special weight to any particular medical opinion.  Rather, for claims filed on or after March 27, 2017, an ALJ handling a disability claim is required to articulate how she or he considered any medical opinion contained within the record.  20 C.F.R. § 404.1520c(a); *Andrew G. v. Comm'r of Soc. Sec.,* 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions.") (quotations and citation omitted).

A medical opinion is defined as a statement from a medical source about "what you can still do despite your impairments and whether you have one or more

impairment-related limitations or restrictions. . . ."  20 C.F.R. § 404.1513(a)(2). Pursuant to the new regulations, the ALJ considers and articulates how *supportable* the medical opinion is when compared with the rest of the record.  20 C.F.R. § 404.1520c(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion . . . will be."  *Id.*  The Administrative Law Judge must additionally consider how *consistent* the opinion is with other evidence from other medical or nonmedical sources.  20 C.F.R. § 404.1520c(2).  While consistency and supportability are the two most important factors, the ALJ must also consider the medical source's relationship with the claimant, evidenced by factors such as length of treatment and frequency of examinations, among other things, as well as any type of specialization that the medical provider may have.  So while an opinion from a treating physician is no longer presumptively determinative, "[t]he new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner."  *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021).

As essentially conceded by the Commissioner, this analysis and articulation required by the statute was never performed relative to the medical opinion of Dr. Khan. Def.'s Mem. of Law at p. 4.  Defendant makes the argument that because the time period that the assessment covered is less than the necessary durational period, the medical source opinion can, in essence, be ignored.  The Court is not persuaded that the harmless

error rationale applies in the case such as this. As an initial matter, the medical opinion of Dr. Khan, if accepted, would have materially changed the RFC and likely affected the ability of Plaintiff to find other work. *Brandy Marie T. A. v. Comm'r of Soc. Sec.*, 2019 WL 2264977, at *5 (N.D.N.Y. May 28, 2019) ("If it would affect work, and there was nothing in the RFC that addressed this, it's not harmless error."); *see also Perrone v. Comm'r of Soc. Sec.*, 2020 WL 3496298, at *4 (W.D.N.Y. June 29, 2020).

As for the durational argument, the lumbar condition that Plaintiff suffers from (lumbar disc herniation with radiculopathy) had existed for several years and was supported by MRIs taken as early as 2015 and reconfirmed in January of 2019. Tr. at pp. 452 & 597. Plaintiff had undergone a lengthy course of treatment, including steroid injections and lumbar blocks. The ALJ, based upon the medical record, has already concluded that the Plaintiff suffers from a severe spine condition of sufficient permanency. Tr. at p. 12. Nor is there any indication in the record that the back condition somehow improved since the treatment provided by Dr. Khan. Tr. at pp. 619-620. Therefore, the back issue is not a mere temporary flareup or exacerbation.

The new regulations require an analysis by the ALJ, as well as a written articulation, concerning the consistency and supportability of Dr. Khan's opinions, as well as factors concerning the other medical opinions. Accordingly, on remand the ALJ is instructed to reconsider all of the medical evidence concerning this lumbar back pain issue in accordance with the new regulations.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED,** that the decision of the Commissioner denying Plaintiff disability benefits is **REVERSED** and the matter is **REMANDED** for further proceedings pursuant to sentence four of section 405(g) as set forth above; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: January 31, 2022
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge